John William LAMB, Petitioner,

v.

Ray H. PAGE, Warden, Oklahoma State Penitentiary, McAlester, Oklahoma, Respondent.

No. A–13611.

Court of Criminal Appeals of Oklahoma.

Feb. 10, 1965.

Sid White, Oklahoma City, for petitioner.

Charles Nesbitt, Atty. Gen., Charles L. Owens, Asst. Atty. Gen., for respondent.

BUSSEY, Presiding Judge.

Petitioner, John William Lamb, was charged in the District Court of Tulsa County with the offenses of Burglary in the Second Degree, After Former Conviction of Felony, Case No. 20342, Uttering a Forged Instrument After Former Conviction of Felony, Case No. 20517, Unauthorized Use of Motor Vehicle After Former Conviction of Felony, Case No. 20534 and Larceny of an Automobile After Former Conviction of Felony, Case No. 20535. He was represented in two of the cases by James P. Goeppinger, Attorney at Law and by Elmore Page in a fifth case

then pending in the Court of Common Pleas.

We observe at the outset that although Tulsa County maintains a staff of public defenders to represent indigent persons in criminal cases, neither Mr. Goeppinger nor Mr. Page are public defenders, but both are well seasoned and experienced lawyers in the criminal practice.

The cases in which Mr. Goeppinger represented petitioner were set for jury trial on the 9th day of April, 1964, and some two weeks prior to the setting Mr. Goeppinger, having received no compensation for his services and being aware that the petitioner had sufficient finances to secure his release on bond in the cases on file in the District Court as above set forth, sought to withdraw as attorney of record. Such request was denied by District Judge W. Lee Johnson, and Mr. Goeppinger prepared to defend the petitioner in the cases set for trial.

Prior to April 9, 1964 Mr. Goeppinger consulted with Mr. Page and the County Attorney of Tulsa County and it was agreed that in the event the petitioner desired to enter pleas of guilty in the four cases then pending in the District Court of Tulsa County and to the fifth charge then pending in the Court of Common Pleas, the County Attorney's office would recommend a seven year sentence in each of the cases and further recommend that they run concurrently. The attorneys consulted with District Judge Raymond W. Graham who was not adverse to such a recommendation. The petitioner was notified by Mr. Goeppinger. of these discussions and the petitioner, a twenty-eight year old ex-convict, indicated that he wished to proceed to trial.

On the morning of April 9, 1964 Mr. Goeppinger appeared in open court and announced ready for trial, but the petitioner having consulted with his minister, Reverend McElroy, Mr. Elmore Page and his mother, who was present in the courtroom, elected, to withdraw his plea of not guilty. He was then advised by the trial court that if he entered a plea of guilty he could not thereafter change his mind, but the petitioner waived his right to trial by jury and entered his plea of guilty and requested immediate sentencing. The trial court delayed judgment and sentence until April 10, 1964 in order that the case pending in the Court of Common Pleas could be transferred to the District Court and sentence could be pronounced to run concurrently in each of the five cases.

When the petitioner appeared for sentencing he sought to withdraw his plea of guilty, asserting his right to a jury trial, and further stating that he had assumed he had twenty-four hours to change his mind, and having reflected on the plea of guilty, had determined that he wanted to proceed to trial.

Record of these proceedings were taken and Mr. James Goeppinger made the following statement to the court:

"* * * I will say this to the Court, that this boy—I represented him in two cases, the first two cases that appear on the docket. I represented him in Common Pleas preliminary hearings on these matters. The other two particular charges, I did not represent him in the Court of Common Pleas. They were handled by a public defender. I did not appear in arraignment for him at the behest of his mother. Since that time, he was able to make bond, since the date of the arraignment he was able to make bond; he was out on bond and he was picked up on another felony charge. During that time, he didn't call me, he didn't see me, that he was at liberty; he didn't see me or talk to me or anything, and I did attempt some two weeks ago to withdraw from these particular cases, because I don't like to spend my time on charity cases when a man can at least rake up enough money to make bond. However, Judge Johnson said that it was too late, that I was going to have to represent him. I did—I came up here yesterday. I communicated the offer of what the County Attorney's recommendation would be in this particular

matter. He said he wouldn't take it. We then continued, Mr. Page who represented him on his latest felony charge downstairs came in and talked to him, and a minister, Mr. Reverend McElroy, I believe his name was, came in and talked to him. I didn't urge him to take it in any of those conferences. I said, 'This is a deal where it's your life, you've got to make up your own mind.' I said, 'I'm ready to go to trial.'

"THE DEFENDANT: That is true, Mr. Goeppinger did not, as far as actually—Actually, the only two persons that were really trying to get me to plead guilty to this was Mr. Page and this minister that was up here.

"MR. GOEPPINGER: I communicated what the offer was to him. If the Court will recall, he called for a jury; the jury filed into the room. I was informed by a deputy sheriff at that time that he would accept the offer of the County Attorney with the proviso that all five of them could be wrapped up in one little ball of twine. If the Court will remember, I was ready to try that case. Albeit I haven't been paid, I was ordered to stay in this particular case, and I was ready to try it. I used no coercion and if he says that he was confused, he didn't appear any more confused yesterday than he does today. The Court specifically told him that he was pleading guilty, and that there would be no backing out, and it was with the understanding that we passed this case until this afternoon at the hour of 1:30. That's all I have to say about it, sir."

The court then proceeded to pronounce judgment and sentence on petitioner and advised of his right to appeal using the following language:

"THE COURT: * * * you have a right to appeal this decision to the Court of Criminal Appeals You may take the necessary steps to do so. You will be apprised of that. I will permit Mr. Goeppinger at this time to withdraw from any further consideration, appoint a public defender to assist you in the perfection of an appeal, to bring the matter before the Court of Criminal Appeals so that any rights that you may contend have been violated by this Court, certainly, the appellate court having jurisdiction on appeal can review it and in the event any rights that you contend you have been deprived of, they will be brought to the attention of that court for review. * * *"

No appeal was ever filed in this court within the time allowed by law, but on December 2, 1964 the petitioner, by and through his attorney, Mr. Sid White, filed this petition for Habeas Corpus and the same was docketed and argued on the 16th day of December, 1964. In the petitioner's application it is asserted that his constitutional rights were denied him in that he was denied a jury trial, and that the judgments and sentences rendered by the court were null and void. He urges that his plea of guilty was entered under coercion and duress, and that this being true both his plea of guilty and waiver of jury trial were without force and effect.

On the record before us we are of the opinion that the defendant knew and understood the crimes with which he was charged, had been advised of his constitutional right to a jury trial and was effectively represented by counsel of his own choice, and that he effectively waived his rights to jury trials and entered pleas of guilty to the four felony charges with full knowledge of the consequences of such a plea.

Under these circumstances we follow the rule enunciated in Antuna v. State, Okl. Cr., 388 P.2d 345 wherein this court held that:

"The granting or denying of permission to withdraw a plea of guilty either before or after judgment is a matter

within the sound discretion of the trial court."

and further:

"Defendant should not be permitted to trifle with the court by changing plea to criminal charge capriciously."

We are of the opinion, and therefore hold, that the trial court did not abuse its discretion in refusing to allow the defendant to withdraw his pleas of guilty. Writ denied.

NIX and BRETT, JJ., concur.